# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MIDAMINES SPRL LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16 C 9429 |
| | ) | |
| KBC BANK N.V., | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |

## AMENDED MEMORANDUM OPINION AND ORDER

This dispute, over a sum of about $100,000, has traveled a long and winding road. What began in Belgium has made stops in the Democratic Republic of Congo, New York federal and state courts, the Second Circuit, and now the Northern District of Illinois. Before the Court is a motion by Defendant KBC Bank N.V. ("KBC") to dismiss this action on numerous grounds, including lack of subject matter and personal jurisdiction, collateral estoppel, *forum non conveniens*, and failure to state a claim. In short, KBC argues that the plaintiff, Midamines SPRL Ltd. ("Midamines" or "Midamines Illinois") (in reality, its sole officer, Hassan Abbas, who also serves as Midamines' counsel), should not be permitted to open up yet another front in this protracted conflict. The Court could not agree more. Among the host of reasons KBC offers for why this case does not belong here, the Court needs only one: lack of personal jurisdiction. Because Midamines has failed to show that KBC has any significant ties to Illinois or that its suit-related conduct is connected to this state in a meaningful way, the complaint is dismissed without prejudice under Rule 12(b)(2). Furthermore, the complaint appears to be frivolous for reasons other than lack of personal jurisdiction, and even though this Court does not have jurisdiction over KBC and cannot resolve the case on the merits, it does have the authority to assess sanctions for the filing of a frivolous complaint. The Court therefore will require

Midamines and Abbas to show cause why Rule 11 sanctions should not be imposed for filing a frivolous pleading.

## BACKGROUND

### A. Facts[1]

KBC is a Belgian bank and insurance company organized under Belgium law with its principal offices in Brussels. (Grimmig Decl. ¶ 2, ECF No. 17-5.) KBC operates worldwide through its branches and sister banks in Europe, and has one branch office in the United States, which is located in New York. (*Id.* ¶¶ 3-4.) In 2006, Midamines SPRL ("Midamines Congo"), a diamond mining company registered in the Democratic Republic of Congo, opened a bank account with one of KBC's independently operated subsidiaries (the "Antwerp Bank").[2] (Vanhuysse Decl. ¶¶ 2, 5-6, ECF No. 38-1.) In 2012, the Antwerp Bank closed Midamines Congo's account due to a dispute within the company over who had control over the account. (*Id.* ¶ 11, 13-14.) After closing the account, the Antwerp Bank issued two bank checks that represented the balances of two subaccounts—a dollar denominated check in the amount of $35,110.72 (the "USD Check") and a Euro denominated check in the amount of €56,414.73 (the "Euro Check") (together "the Bank Checks"). (*Id.* ¶ 20.) Both checks were made payable to Midamines Congo. (*Id.*; *see also* Abbas Decl., Ex. E, ECF No. 44-5.)

On August 8, 2012, the Antwerp Bank delivered the Bank Checks to Abbas in his capacity as a proxy holder for the Midamines Congo account. (Compl. ¶¶ 8-9, ECF No. 1;

---

[1] The facts in this background section are drawn from allegations in the complaint, which are presumed true for purposes of this motion, and from declarations and other evidence submitted by both parties, which the Court may consider on a Rule 12(b)(2) motion. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003).

[2] The Antwerp Bank, formerly known as Antwerp Diamantse Bank, has since merged with KBC and no longer exists as a separate entity. (Def. Mem. in Supp. of Renewed Mot. to Dismiss 3 n.3, ECF No. 39.)

Vanhuysse Decl. ¶¶ 15-20.) According to Abbas, the checks served as payment for professional legal services he rendered to Midamines Congo from 2009 to 2012. (Compl. ¶ 9.) Shortly after the checks were issued, the Midamines Congo account became the subject of two lawsuits: one in the Democratic Republic of Congo and another in Belgium. (Vanhuysse Decl. ¶¶ 22-30.) The Congolese litigation concerned the validity of the documentation Abbas (and others) used to obtain a proxy on the account and resulted in an order rendering that documentation invalid. (*Id.* ¶¶ 36-37.) In the Belgian litigation, an Antwerp commercial court issued an injunction prohibiting the Antwerp Bank from executing any payment instructions relating to the account. (*Id.* ¶¶ 22-24.) In accordance with the injunction, on August 24, 2012, the Antwerp Bank stopped payment on the Bank Checks. (*Id.* ¶ 24.) The bank also informed Abbas that it could not honor the checks due to the injunction. (*Id.* ¶ 25.)

About a month later, on September 26, 2012, Abbas incorporated Midamines Illinois. (Abbas Decl., Ex. B, ECF No. 44-2.) Shortly thereafter, on October 11, 2012, the USD Check was deposited at a PNC bank in New York. (Compl. ¶ 10.) The check had been endorsed payable to a Midamines Illinois account, which had been opened in Illinois. (Abbas Decl. ¶ 9.) Later that day, KBC New York posted the USD Check for payment and credited Midamines Illinois' account for $35,110.72, the value of the USD Check. (Compl. ¶ 10; Grimmig Decl. ¶ 10.) KBC then debited Antwerp Bank's account for the same amount. (Grimmig Decl. ¶ 10.)

On October 19, 2012, the Antwerp Bank sent KBC an inquiry regarding the $35,110.72 debit and reminded the New York branch that it had issued a stop payment order on the USD Check. (*Id.* ¶ 11.) Later that day, KBC New York notified its electronic payment vendor that the check was subject to a stop order, which had the effect of stopping payment on the check. (*Id.*

¶ 12.) KBC New York then reversed the credit on October 23, 2013 and re-deposited the $35,110.72 into the Antwerp Bank's account. (*Id.* ¶ 13.)

The following month, the Euro Check was deposited at a Citibank in New York for payment to a second Midamines Illinois account. (Abbas Decl. ¶ 13, *see also* Ex. E.) On November 14, 2012, the U.S. Bank National Association presented the Euro Check to KBC in Brussels for payment. (Berkers Decl. ¶ 4, ECF No. 38-5.) KBC, however, refused to honor the check based on the stop payment order that had been issued by the Antwerp Bank. (*Id.* ¶ 6.)

### B. Procedural History

Shortly after KBC refused to honor the Euro Check, Abbas, on behalf of himself, Midamines Illinois, and Midamines Congo, filed suit against KBC and the Antwerp Bank in the Southern District of New York (the "New York Federal Action"). That suit alleged that KBC and the Antwerp Bank wrongfully dishonored the Bank Checks and sought damages for fraud, conspiracy to commit fraud, money laundering, RICO, and unjust enrichment. *See Midamines SPRL Ltd. v. KBC Bank NV*, No. 12 C 8089 (RJS), 2014 WL 1116875, at *1 (S.D.N.Y. Mar. 18, 2014). KBC and the Antwerp Bank moved to dismiss the complaint on several grounds, including *forum non conveniens*. *Id.* at *2. The defendants argued that any disputes arising out of the Midamines Congo account are subject to a forum selection clause that requires litigation in Belgium. *Id.* In March 2014, the New York district court agreed and dismissed the suit. *Id.* at *7. In so holding, the court found that the forum selection clause was mandatory, extended to Abbas and Midamines Illinois, and applied to any claim "arising out of [KBC and the Antwerp Bank's] refusal to honor the Bank Checks. *Id.* at *3-6.

Abbas and Midamines Illinois appealed the district court's decision. In early 2015, the Second Circuit upheld the district court's ruling in a summary order. *Midamines SPRL Ltd. v.*

4

*KBC Bank NV*, 601 F. App'x 43 (2d Cir. 2015). The court found no error in the district court's opinion and agreed that the suit was properly dismissed as to all parties on the basis of *forum non conveniens*. *Id.* at 44-45.

Immediately following the Second Circuit's decision, Abbas and Midamines Illinois filed suit in New York state court seeking damages relating to both Bank Checks (the "New York State Action"). In February 2016, the New York state court dismissed the action, in part, because all of the claims were, or could have been, raised by the plaintiffs in the New York Federal Action and that the claims were governed by a forum selection clause that required the litigation to be brought in Belgium. Transcript, *Midamines SPRL Ltd. v. KBC Bank N.V.*, Index No. 100383/2015 (N.Y. Sup. Ct. Feb. 5, 2016). In other words, the court concluded that the plaintiffs were barred by collateral estoppel from re-litigating Abbas and Midamines Illinois' claims concerning the Bank Checks in New York.

In March 2016, Abbas again filed suit in New York federal court, this time against KBC's counsel, asserting a claim for tortious interference with business relations (the "Abbas Litigation.") The New York district court dismissed the suit soon thereafter. Opinion and Order, *Hassan A. Abbas, Esq. v. Orrick, Herrington, & Sutcliffe LLP*, No. 15 C 1545 (RJS) (S.D.N.Y Mar. 16, 2016). In granting KBC's motion to dismiss, the court found that "the Complaint does not come close to satisfying the standard for a tortious interference claim[;] . . . [r]ather, it seems designed, like many of [Abbas'] previous motions in the [New York Federal Action], to prolong litigation and continue to harass" KBC's counsel. *Id.* at 13. In June 2016, following written submissions and a hearing, the court issued an order enjoining Abbas from "making any filings in this Court in this case or in any action involving the allegations set forth in the related [New

5

York Federal] Action without first obtaining leave of the Court." Order at 7, *Hassan A. Abbas, Esq. v. Orrick, Herrington, & Sutcliffe LLP*, No. 15 C 1545 (RJS) (S.D.N.Y Mar. 16, 2016).

Following the issuance of this injunction, Abbas sought leave in the New York Federal Action to file a declaratory suit against KBC. The district court denied the request, stating that the "contemplated declaratory judgment action is clearly an attempt to relitigate the same issues raised in the Complaint in this action" and "Abbas makes no attempt to explain why this action would not also be dismissed under the *forum non conveniens* doctrine." Order at 1-2, *Midamines SPRL Ltd. v. KBC Bank NV*, No. 12 C 8089 (RJS) (S.D.N.Y. June 27, 2016). After the district court denied Abbas' motion for reconsideration, he filed a second request for leave to file an amended complaint, this time on behalf of Midamines Illinois and Midamines Congo. The court denied this request as well, stating that Abbas "cannot so cavalierly circumvent the Court's filing injunction" by bring the same suit "in the names of other entities that evidently serve as alter egos for Abbas himself." Order at 2, *Midamines SPRL Ltd. v. KBC Bank NV*, No. 12 C 8089 (RJS) (S.D.N.Y. Sept. 12, 2016).

Abbas subsequently appealed the district court's filing injunction; however, the Second Circuit recently upheld the ruling in another summary order. Summary Order, *Midamines SPRL Ltd. v. KBC Bank N.V.*, No. 16-1048-CV (2d Cir. Dec. 6, 2017). The appellate court noted in its decision that Abbas' declaratory action claim, which "seeks a judgment that he is entitled to bank funds allegedly held by KBC," was both an evasion of the district court's previous rulings and "would be immediately dismissed for *forum non conveniens* if allowed to proceed." *Id.* at 5.

Having struck out in New York, Abbas filed suit in this Court on behalf of Midamines Congo and Midamines Illinois in October 2016. The complaint in this action seeks a declaration that both entities are entitled to payment on the Bank Checks and also asserts claims for

conversion and violations of the Illinois Uniform Commercial Code based on KBC's refusal to honor the checks. In December 2016, the Court found that it lacked subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because both Midamines Congo and KBC are foreign entities. (Order, ECF No. 28.) The Court, however, granted Abbas' request to drop Midamines Congo as a party, thereby leaving "a putative citizen of Illinois as plaintiff and a foreign entity as a defendant," *id.*, and (arguably) preserving diversity.

On March 24, 2017, KBC filed a renewed motion to dismiss the remaining plaintiff, Midamines Illinois. The motion seeks dismissal on several grounds, including: (1) lack of subject matter jurisdiction, (2) lack of personal jurisdiction, (3) collateral estoppel, (4) *forum non conveniens*, and (5) failure to state a claim. During a hearing on KBC's motion to dismiss, however, the Court instructed Midamines Illinois to address only the threshold issues concerning jurisdiction.

## DISCUSSION

The parties having fully briefed jurisdiction, the Court concludes that it lacks personal jurisdiction over this dispute.[3] Midamines offers virtually no support for its assertion that KBC is subject to both general and specific jurisdiction in Illinois. The complaint therefore is dismissed under Rule 12(b)(2). Moreover, although Midamines was instructed not address the collateral estoppel issue, the Court finds after further review that a response is warranted, even at this late stage. The Court is hard pressed to see how Midamines has any colorable argument that it is collaterally estopped from litigating this case anywhere other than Belgium. The Court therefore

---

[3] Because the Court dismisses the complaint for want of personal jurisdiction, it need not address KBC's argument that the complaint fails for lack of subject matter jurisdiction as well. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) (finding that personal jurisdiction inquiry can precede subject matter jurisdiction inquiry).

orders Midamines and Abbas to show cause why they should not be sanctioned for filing an action in this Court in which Midamines could obtain no relief.

## I. Personal Jurisdiction

The Court addresses first the issue of personal jurisdiction. "A complaint need not include facts alleging personal jurisdiction. However, once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found.*, 338 F.3d at 782 (citations and alterations omitted). Where, as here, the issue is decided on the basis of written materials without an evidentiary hearing, the plaintiff needs to establish only a *prima facie* case for personal jurisdiction. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). Moreover, the Court must accept as true at this stage all well-pled facts in the complaint and resolve any factual disputes in favor of the plaintiff. *Id.* "[A]ny facts contained in the defendant's affidavits that remain unrefuted by the plaintiff," however, are also regarded as true. *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

Because this Court is sitting in diversity, it has personal jurisdiction over KBV only if an Illinois court of general jurisdiction could exercise jurisdiction in this matter. *N. Grain Mktg.*, 743 F.3d at 491 (citing Fed. R. Civ. P. 4(k)(1)(A)). Illinois courts are permitted to exercise jurisdiction over a defendant "as to any cause of action arising from . . . (2) [t]he commission of a tortious act within [Illinois; or] . . . (10) [t]he acquisition of ownership, possession or control of any asset or thing of value present within [Illinois] when ownership, possession or control was acquired." 735 Ill. Comp. Stat. 5/2–209(a)(2), (10). Moreover, and more importantly, Illinois courts are permitted to exercise jurisdiction "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." *Id.* § 5/2–209(c). Illinois' long-

arm statute thus extends jurisdiction to wherever the Constitution allows and the plaintiff need only demonstrate that personal jurisdiction comports with the Due Process Clause. *N. Grain Mktg.*, 743 F.3d at 492.

Due process requires that a defendant have sufficient "minimum contacts" with the forum state such that litigating the suit in the state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). That is, the defendant must "reasonably anticipate being haled into court" in the forum state based on its purposeful contacts with that state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). There are two types of contacts that may give rise to personal jurisdiction: general and specific. Midamines argues that both types are applicable, but neither permits suit in Illinois against KBC.

### A. General Jurisdiction

General personal jurisdiction arises when a defendant has "continuous and systematic" contacts with the forum state. *uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425-26 (7th Cir. 2010) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)). "The threshold for general jurisdiction is high[.]" *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (citing *Purdue Research Found.*, 338 F.3d at 787 n.16). Recently, the Supreme Court has stated that for general jurisdiction to apply, the defendant must be "essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The 'paradigm' forums in which a corporation is 'at home' are the corporation's place of incorporation and its principal place of business." *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (citing *Daimler*, 134 S. Ct. at 760; *Goodyear*, 564 U.S. at 924). The exercise of

general jurisdiction is not limited to these forums, however. "[I]n an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (quoting *Daimler*, 134 S. Ct. at 761 n.19).

Despite Midamines' contention that KBC has continuous and systematic contacts with Illinois, (Pl. Opp'n to Def. Renewed Mot. to Dismiss 18, ECF No. 43), the state does not begin to qualify as "home" for KBC. Illinois is neither KBC's place of incorporation nor its principal place of business. Rather, it is a Belgian bank and insurance company, organized under Belgian law, with its primary offices in Brussels. (Grimmig Decl. ¶ 2.) KBC operates worldwide, but is centered in Europe. (*Id.* ¶ 3.) And while it maintains a branch in the United States, that office is located in New York, not Illinois. (*Id.* ¶ 4.) KBC's only connection with Illinois is that it has approximately 12 active clients in the state. (*Id.* ¶ 5.) But a handful of clients—especially given KBC's worldwide operations—cannot serve as a basis for general jurisdiction. *See Daimler*, 134 S. Ct. at 752, 761(finding no general jurisdiction in forum state that accounted for 2.4% of defendant's worldwide sales, stating that "the same global reach would presumably be available in every other state in which [the defendant's] sales are sizable"); *see also Nicholson v. E-Telequote Ins., Inc.*, No. 14 C 4269, 2015 WL 5950659, at *4 (N.D. Ill. Oct. 13, 2015) ("[D]oing 10 percent of your business in Illinois does not make a corporation 'at home' in Illinois.")

In the alternative, Midamines argues that it should be permitted to pursue discovery regarding the "extent of KBC['s] contacts, . . . clients, and activities in Illinois" to confirm whether KBC is, in fact, subject to general jurisdiction. (Pl. Opp'n 18.) While the Court has discretion to permit jurisdictional discovery, *see Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000), it declines to do so here. At a minimum, the plaintiff must establish a *prima facia* case for personal jurisdiction before

discovery should go forward. *Id.*; *see Sullivan v. Sony Music Entm't*, No. 14 C 731, 2014 WL 5473142, at *5-6 (N.D. Ill. Oct. 29, 2014) (stating that jurisdiction discovery is not warranted "where the defendant has provided affirmative evidence that refutes the plaintiff's assertion of jurisdiction"). Midamines, however, has failed to make any showing that even suggests the possibility that KBC could be subject to general jurisdiction in Illinois. In any event, the Court fails to see how any amount of discovery regarding KBC's twelve Illinois-based clients could create such a basis. Thus, the Court rejects Midamines' request for jurisdiction discovery and concludes that KBC is not subject to general personal jurisdiction.

### B. Specific Jurisdiction

Bereft as Midamines' general jurisdiction argument is, its claim that Illinois may exercise specific jurisdiction over KBC may be even weaker. Specific jurisdiction "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). Stated differently, "the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction." *N. Grain Mktg.*, 743 F.3d at 492 (internal quotations marks and citation omitted). Specific jurisdiction is appropriate only "where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* (citation omitted). Moreover, the exercise of personal jurisdiction must not offend "traditional notions of fair play and substantial justice." *Id.* (citation omitted).

Where, as is the case here, the complaint sounds in intentional tort, the initial inquiry focuses on whether the defendant's conduct was "purposefully directed" at the forum state. *Tamburo*, 601 F.3d at 702. Courts traditionally apply the *Calder* effects test to assess purposeful direction, which requires the plaintiff to show "(1) intentional conduct (or 'intentionally and

allegedly tortious conduct'); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Id.* at 703. Midamines argues that KBC has purposefully directed its tortious conduct at Illinois for three reasons, but none are availing.

Midamines' principal argument is that KBC "intentionally sent unauthorized messages to Illinois, through the Illinois banking system" so that KBC could "enter into [Midamines'] Illinois bank account to unlawfully take possession" of the funds at issue. (Pl. Opp'n 19.) In support of this argument, Midamines relies on two Seventh Circuit cases. The first case, *FMC Corp. v. Varanos*, involves a regional office manager in Greece who was sued by her employer in a RICO action for faxing false expense reports to the employer's headquarters in Chicago. 892 F.2d 1308, 1309-10 (7th Cir. 1990). The court affirmed a finding of personal jurisdiction because the manager had sent the faxes to Illinois "to effectuate her scheme to defraud" her employer and thus "should have foreseen that she could be required to answer for her actions in Illinois." *Id.* at 1313. In the second case, *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, a nonresident company allegedly misrepresented to an Illinois company during a phone conversation, in violation of the Illinois Consumer Fraud Act, that the entire amount of its deposit was secured for repayment. 906 F.2d 276, 278-79 (7th Cir. 1990). The appellate court upheld personal jurisdiction under the tortious act provision of Illinois's long-arm statute, finding that by initiating the phone call, the nonresident company "clearly evidenced an intent to affect an Illinois interest, because [it] knew that [the other company] was an Illinois corporation investing money for two Illinois limited partnerships." *Id.* at 282.

Midamines' argument is unavailing for two reasons. First, it fails to account for the Euro Check. There is no dispute that only the USD Check was credited and withdrawn from

Midamines' bank account. (Compl. ¶ 13; Beckers Decl. ¶¶ 5-6.) In other words, KBC never issued payment on the Euro Check and, as such, never sent an unauthorized message to Illinois to take possession of those funds. Consequently, KBC has not aimed any conduct with respect to the Euro Check at Illinois, let alone purposefully.

Second, contrary to Midamines' contention and in contrast to the two cases it cites, there is no basis to conclude that KBC *intentionally* sent a banking message to Illinois or that KBC *knew* that the credit was being pulled from an account that was opened in Illinois. Midamines attempts to establish KBC's knowledge and intent based on three documents. (Pl. Opp'n 22.) The first two are emails between Abbas and PNC Bank employees dated October 17, 2012 in which PNC employees confirm that the USD Check funds are available to Midamines and set up a wireless payment service for Midamines' account. (Hassan Decl., Exs. C & F, ECF Nos. 44-3, -6.) The third document is an extract summary of Midamines' online banking statement from 2012 (which Abbas appears to have recreated). (*Id.* at Ex. D, ECF No. 44-4.) At most, these documents show that the funds underlying the USD Check were credited and withdrawn from Midamines' account—a fact that KBC does not dispute. However, there is no discussion or indication in any of the documents that KBC knew that the funds were headed for Illinois. Nor is there evidence that any KBC employees received the emails or the summary prior to this suit.

Nor is there any indication from the USD Check or how it was deposited that points toward Illinois. The check was drawn on a Belgian bank, issued to Midamines Congo, and deposited at a PNC branch in New York. (Compl. ¶ 10; Abbas Decl., Ex. E at 1-2.) Although the check was later made payable to a Midamines Illinois account number and KBC initially processed payment, that alone does not charge KBC with the knowledge required to establish specific jurisdiction. *See Froning & Deppe, Inc. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 695 F.2d

289, 291-92 (7th Cir. 1982) (agreeing that "it would be unreasonable to charge each bank with the knowledge that it may at any time be called to answer in the courts of any of the fifty states from which a check" originated or where a check was ultimately deposited "[i]n view of the enormous volume of interstate check processing which every bank performs on a daily basis").

The second argument that Midamines advances in support of its targeting theory is that even if KBC did not have actual knowledge that the USD Check was ultimately deposited in Illinois, it could have foreseen that the funds were destined for Illinois based on the fact that Midamines was incorporated and had its principal place of business in Illinois. (Pl. Opp'n 22.) This argument is meritless for two reasons. For starters, there is no evidence in the record that KBC even knew that Abbas incorporated Midamines in Illinois prior to the transactions. But even if there were such evidence, personal jurisdiction must be established by ties with the putative forum that the defendant creates, not the plaintiff.

The Seventh Circuit explained this point in depth in *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014). There, the court of appeals overturned a finding of personal jurisdiction in a trademark infringement action brought in Indiana federal court. *Id.* at 803-04. The district court had found that the alleged infringer, a California company, was subject to specific jurisdiction in Indiana, in part, because it "knew that the plaintiff was an Indiana company and could foresee that its misleading emails and sales would harm the plaintiff in Indiana." *Id.* at 802. On appeal, the Seventh Circuit held that the Supreme Court's decision in *Walden* called for the opposite conclusion. Specifically, it discussed how in *Walden*, "the defendant knew that the plaintiffs were going to Nevada, and it was foreseeable that they would want to use their money there, but the [Supreme] Court squarely rejected this as a permissible basis for jurisdiction." *Id.* The appellate court then reiterated that it

14

is not enough that the defendant's "conduct affected plaintiffs with connections to the forum State[,]" but rather "[t]he relationship between the defendant and the forum must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* (quoting *Walden*, 134 S. Ct. at 1118, 1126) (internal quotation marks omitted).

Midamines' final argument is that the *Calder* test is satisfied because the injury occurred in Illinois, even if all other relevant conduct occurred outside of the state. (Pl. Opp'n 20-21.) Citing *Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997) and *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. P'ship*, 34 F.3d 410 (7th Cir. 1994), Midamines contends that "the location of the injury is vital" to the targeting analysis. (Pl. Opp'n 20.) Midamines, however, fails to realize that the Seventh Circuit reexamined—and rejected—this argument in *Advanced Tactical* as well. The appellate court explained that, following *Walden*, the state in which the victim of a tort suffers an injury cannot serve as a proper forum where, as here, the plaintiff is the "only link between the defendant and the forum." *Advanced Tactical*, 751 F.3d at 802 (citing *Walden*, 134 S. Ct. at 1122.) In reaching this conclusion, the Seventh Circuit discussed *Janmark* and stated that "[a]ny decision that" runs counter to *Walden* "can no longer be considered authoritative." *Id.*

At bottom, the only action KBC has taken in the context of this litigation is to use the interstate banking system (in New York) to credit and then reverse a payment to Midamines. That Midamines deposited the payment in an account opened in Illinois was entirely fortuitous and cannot serve as grounds for specific jurisdiction over KBC. *See Walden*, 134 S. Ct. at 1123 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.") (citing *Burger King*, 471 U.S. at

475); *Skoot v. State St. Bank & Tr. Co.*, No 97 C 50126, 1997 WL 792985, at *4 (N.D. Ill. Dec. 22, 1997) (finding that Massachusetts banks' contacts with Illinois were "random, fortuitous, and attenuated" and did not give rise to specific jurisdiction where bank used interstate banking system to process forged check that was ultimately deposited in Illinois). Thus, Midamines fails to establish personal jurisdiction and the Court dismisses its complaint pursuant to Rule 12(b)(2).

## II.     Rule 11 Sanctions

Having dismissed the complaint, the Court turns to the matter of sanctions. Under Rule 11(c)(3) of the Federal Rules of Civil Procedure, a court may on its own initiative require a party and its attorney to show cause why a pleading does not violate the requirements set forth in subsection (b) of the Rule.[4] Fed. R. Civ. P. 11(c)(3). There is reason here for concern that the complaint filed by Midamines and Abbas may run afoul of Rule 11(b). In particular, there is a substantial question as to whether Midamines is collaterally estopped from asserting the claims set forth in the complaint by the prior ruling in the New York Federal Action that Midamines' claim to the bank funds held by KBC must be litigated in Belgium.

Although the Court did not ask Midamines to address this issue (the Court limited its response to jurisdictional issues only), no colorable response immediately presents itself to the Court. The doctrine of collateral estoppel (also known as issue preclusion) dictates that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that

---

[4] Although the Court concludes that it lacks personal jurisdiction over KBC and thus cannot rule on the merits of Midamines' claims, it nevertheless may assess whether Midamines, and its counsel, Abbas, violated the requirements of Rule 11 by filing a frivolous complaint. *Cf. Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) (finding voluntary dismissal under Rule 41(a) does not deprive district court of authority to impose Rule 11 sanctions). "The violation of Rule 11 is complete when the paper is filed," *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987), so the filing gives rise to the Court's authority to consider sanctions of the responsible party regardless of whether it otherwise has jurisdiction over the merits of a claim.

determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Carter v. C.I.R.*, 746 F.3d 318, 321 (7th Cir. 2014) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). Where, as here, a party seeks preclusion based on a federal-court judgment, federal common law provides the rule of decision. *DeGuelle v. Camilli*, 724 F.3d 933, 935 (7th Cir. 2013) (citing *Taylor v. Sturgell*, 552 U.S. 880, 892 (2008)). In the Seventh Circuit, the doctrine applies where "[t]he party against whom the issue has been resolved must have had, first, a 'full and fair opportunity' to litigate the issue in the previous suit . . . and, second, a meaningful opportunity to appeal the resolution of the issue." *Carter*, 746 F.3d at 321 (quoting *DeGuelle*, 724 F.3d at 935).

There seems to be little doubt that Midamines had a full and fair opportunity (which it pursued) to litigate the issue of *forum non conveniens*. KBC argued in its motion to dismiss in the New York Federal Action that Midamines' claim to the Bank Checks was subject to the exclusive jurisdiction of Belgian courts under a forum selection clause. *Midamines*, 2014 WL 1116875, at *4-6. After Midamines had a chance to brief the issue, the New York district court found that the clause was mandatory and that it applied to both Midamines and its collection efforts. *Id.* Midamines cannot reasonably argue that it did not have a meaningful opportunity to appeal the issue either. Following the New York district court's dismissal of its suit, Midamines appealed the issue of *forum non conveniens* and argued in the Second Circuit that KBC could not enforce the forum selection clause and that the clause did not apply to Midamines or its claims. *Midamines*, 601 F. App'x at 44-45. The appellate court rejected both arguments. *Id.* And just last week, the Second Circuit stated that ***any*** claim predicated on Midamines' entitlement to bank funds allegedly held by KBC "would be immediately dismissed for *forum non conveniens* if

allowed to proceed." Summary Order at 5, *Midamines SPRL Ltd. v. KBC Bank N.V.*, No. 16-1048-CV (2d Cir. Dec. 6, 2017).

Because this appears to be a textbook example of collateral estoppel, the Court concludes that there is a substantial question as to whether Abbas complied with his Rule 11 obligations when he filed the complaint on Midamines' behalf. "Rule 11 imposes a duty on attorneys [and parties] to ensure that any papers filed with the court are well-ground in fact, legally tenable, and not interposed for any improper purpose." *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002); *see also* Fed. R. Civ. P. 11(c)(1) ("[T]he court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."). "The rule is principally designed to prevent baseless filings," *Brunt*, 284 F.3d at 721 (citation omitted), which includes pleadings that assert claims upon which relief is clearly barred, *see Bethesda Lutheran Homes and Servs., Inc. v. Born*, 238 F.3d 853, 859 (7th Cir. 2001) (finding Rule 11 sanctions warranted where "it should have been obvious to any lawyer that relief was barred on multiple grounds, including res judicata [and] judicial estoppel"); *see also* 5A Charles Alan Wright et al., *Federal Practice & Procedure* § 1335 (3d ed.) (discussing Rule 11 criteria).

To address this issue, the Court directs Midamines and Abbas to show cause why sanctions should not be imposed for filing a claim as to which Midamines is collaterally estopped from re-litigating by the New York district court's holding that it is subject to a forum selection clause.[5] (*See* Def. Mem. 21-23.) Following the submission of their brief, the Court will

---

[5] The Court is mindful that the complaint offers several reasons why the New York district court's ruling on *forum non conveniens* does not preclude Midamines from filing the present action, including, among others, that the New York district court's dismissal was without prejudice, that the prior action did not involve a claim for declaratory judgment or conversion, and that the forum selection clause no longer exists. (Compl. ¶¶ 32-37.) Because these arguments

18

either discharge the show cause order or hold a hearing to determine whether Abbas and/or Midamines should be sanctioned under Rule 11 for filing a frivolous suit that was subject to immediate dismissal on the basis of collateral estoppel. If necessary, the Court will request briefing from KBC prior to the hearing.

\*　　\*　　\*

For the reasons stated above, the complaint is dismissed under Rule 12(b)(2) without prejudice to Midamines refiling in an appropriate forum, and the case will be administratively terminated on the Court's docket. The Court orders Midamines and Abbas to show cause why they should not be sanctioned under Rule 11 for filing a complaint that is barred under the doctrine of collateral estoppel. They are directed to file a brief that addresses the issues outlined above no later than January 12, 2018. A hearing date, if required, will be set following review of this submission.

Date: January 16, 2018

John J. Tharp, Jr.
United States District Judge

---

are raised in the complaint, not a legal brief, and are not supported with any legal citations, the Court declines to consider them at this time. The Court, however, will consider any argument that Midamines and Abbas raise in their rule to show cause brief.